Argued and submitted June 16, 1997, reversed and remanded with instructions in part; otherwise affirmed March 18, 1998

James L. RAYBURN,
*Respondent,*

*v.*

Robert COFFELT
and Aletha Coffelt,
*Appellants.*

(94CV-1308CC; CA A94589)

957 P2d 580

Keith T. Kramer argued the cause for appellants. With him on the brief was Walton, Nilsen, Johnson & Guerra, P.C.

Julie Jones argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Deits, Chief Judge,* and Landau, Judge.

LANDAU, J.

---

* Deits, C. J., *vice* Leeson, J., resigned.

## LANDAU, J.

This action arises out of a dispute over land that adjoins both plaintiff's and defendants' real property. Plaintiff brought suit to quiet title to the disputed land, claiming ownership of the land by adverse possession under the common law and under ORS 105.620. Plaintiff also sought to establish ownership of the land by proving a boundary by mutual agreement and acquiescence and sought damages for trespass. Defendants counterclaimed to quiet title. The trial court quieted title in plaintiff, awarded him damages for defendants' trespass and entered judgment for plaintiff on defendants' counterclaim.[1] Defendants appeal. On *de novo* review, ORS 19.415(3), we reverse.

The disputed parcel of land consists of an approximately seven-acre triangular tract of land that separates plaintiff's and defendants' property, as illustrated below. The triangular parcel is bordered on the west by plaintiff's property, on the south by Edward Pickett's property and on the third side by a fence. Defendants are the record owner of the disputed parcel. Its terrain is steep with brush and timberland and one small area of grass, approximately 50-60 feet by 200 feet.

---

[1] The trial court entered judgment for defendants on plaintiff's claims for boundary by mutual agreement or acquiescence, and plaintiff does not cross-appeal that portion of the judgment.

The record—sketchily—shows the following relevant facts. What is now defendants' property originally was owned by the Finns, and what is now plaintiff's property belonged to Pickett's parents. In the early 1940s, Pickett's parents and the Finns built a fence to keep the Finns's cattle from wandering on to Pickett's parents' property. No one knows why they located the fence precisely where they did.

Pickett ultimately acquired what is now plaintiff's property.[2] In the 1950s, Pickett's father logged timber on the disputed parcel, but that was after his father sold his interest in what is now plaintiff's property. No one knows why Pickett's father logged that parcel, whether it was for his own use or for Pickett or anyone else.

In 1965, J. F. and Roberta Schmalz purchased the land that plaintiff now owns. On more than one occasion, J. F. Schmalz grazed goats on the disputed parcel, but no one knows how often or how many goats were grazed there. In 1985, Schmalz logged timber on the disputed parcel. At that point, Gene Smith owned what is now defendants' property. Smith noticed that Schmalz had logged the timber on Smith's property. But, given the relatively low price of timber at the time and the probable high cost of litigation, Smith decided not to pursue the matter with Schmalz.

In 1986, the Schmalzes sold their property to plaintiff. That same year, Smith sold what is now defendants' property to Orville Coffelt, defendant Robert Coffelt's father. Defendants acquired the property two years later. Meanwhile, the fence fell into a state of disrepair. In 1989, defendants built a new fence in substantially the same location as the old fence.

In 1993, defendants approached plaintiff about ascertaining the true boundary of the property. Plaintiff asserted that the old fence was the boundary line. Defendants hired a surveyor to determine the property line described in the deed. Shortly thereafter, defendants logged

---

[2] The chain of title reflected in the record is not continuous. It shows that Pickett's parents acquired the property in 1942, that sometime after that they sold the property to an unidentified person and that, sometime later, the property was sold to Bertha McGee, who, in 1946, sold the property to Pickett.

the disputed parcel, which led to the commencement of this lawsuit.

At trial, plaintiff contended that he had acquired the triangle of disputed property by adverse possession. He argued that he and his predecessors had possessed the land honestly believing that it was theirs for more than 10 years and that they put defendants and their predecessors on notice of that by their use of the property as owners. In support of that argument, plaintiff relied on the fact that, in the 1950s, Pickett's father had logged the property and that, in the 1960s, Schmalz grazed goats on the property. He also testified that, between 1986 and 1993, he had walked the disputed parcel "four or five times, three or four times" looking unsuccessfully for deer. He testified further that, during that same period of time, on an unspecified number of occasions, he allowed Pickett to graze his cows on the grassy strip in the middle of the disputed parcel, although he said the grass "wouldn't keep one cow."

The trial court concluded that the foregoing facts created "a close question," but ultimately it concluded that plaintiff's predecessors had acquired title by adverse possession before plaintiff acquired his property. The court cited in support of its decision (1) that the fence put defendants on notice that plaintiff's predecessors had a claim to the disputed parcel; (2) that plaintiff's predecessors had logged the land in the 1950s and in 1985; (3) that one of plaintiff's predecessors, Schmalz, grazed goats on the property; and (4) that plaintiff allowed Pickett to graze his cattle on the property. The trial court further concluded that, because plaintiff had obtained title to the disputed parcel by the time defendants logged it in 1993, plaintiff is entitled to damages for timber trespass.

■ On appeal, defendants argue that the record does not establish all the elements of either common-law or statutory adverse possession. To establish title by adverse possession under the common law, a party must show clear and convincing proof of actual, open, notorious, exclusive, continuous and hostile possession of the property for a 10-year period. *Terry v. Timmons*, 282 Or 363, 365, 578 P2d 405 (1978); *Davis v. Parke*, 135 Or App 283, 286, 898 P2d 804, *rev den* 321 Or 560

(1995). To establish title under ORS 105.620, a party must prove by clear and convincing evidence the common-law elements and also prove that the possession was taken under an honest belief that the person was the actual owner of the property, that such belief continued throughout the vesting period, and that the belief had an objective basis and was reasonable.[3]

■ A person claiming land by adverse possession is required to use the land as an average owner of the particular type of land would use it, even though that use might permit intervals in which the land was not used at all. *Terry*, 282 Or at 369. Nonetheless, the acts of the person claiming title as an adverse possessor

> "must be so open and exclusive as to leave no inquiry as to his intention, so notorious that the owner may be presumed to have knowledge that the occupancy is adverse, and so continuous as to have furnished a cause of action every day during the required period."

*Reeves et al v. Porta*, 173 Or 147, 155, 144 P2d 493 (1944) (quoting *McNear v. Guistin*, 50 Or 377, 92 P 1075 (1907)).

■ We first address whether the record contains clear and convincing proof that plaintiff and his predecessors had open, notorious, continuous and hostile possession of the property for a 10-year period. We begin by noting that the continuous existence of the fence alone is insufficient to put defendants and their predecessors on notice of an adverse possession claim. *Woolfolk v. Isler*, 37 Or App 687, 693-94, 588 P2d 632 (1978) (citing *Brooke v. Amuchastegui*, 226 Or 335, 342, 360 P2d 275 (1961) ("the probative character of the fence [is] one determinant of [a] plaintiff[']s adverse possession")); *see also Whitley v. Jacobs,* 278 Or 541, 548, 564 P2d 1057 (1977). Moreover, plaintiff did not maintain the fence, post no-trespassing signs or take any other affirmative steps to put defendants on notice that the fence marked the boundary of his property.

---

[3] ORS 105.620 applies only when claims are filed and the interest to the property has vested after January 1, 1990. Or Laws 1991, ch 109, § 3; *Markovich v. Chambers*, 122 Or App 503, 506, 857 P2d 906 (1993).

■     We also note that the logging of the disputed parcel in the 1950s does not "count" in the adverse possession equation. At the time Pickett's father logged the parcel, he did not own what is now plaintiff's property, and there is no evidence that he conducted the logging on behalf of the owner at that time.

■     The next earliest conduct on which plaintiff relies to establish his adverse possession claim is Schmalz's grazing of goats on the disputed parcel. That conduct might well, in some circumstances, be sufficient to put an owner on notice of an adverse possession claim. In this case, however, there is a complete absence of evidence as to when the grazing occurred, how many goats Schmalz grazed on the parcel and how often he did so. Such evidence is critical, because, as the Supreme Court noted in *Miller v. Bushnell*, 275 Or 45, 49, 549 P2d 655 (1976):

> " 'The occasional pasturing of cows upon a piece of brushy wilderness is not enough to put an owner upon notice that his title is being challenged by adverse possession, * * *.' "

(Quoting *Reeves*, 173 Or at 153.) *Cf. Terry*, 282 Or at 369 (from 1958 to 1973, adverse possessors allowed others to pasture horses on the disputed land); *Davis*, 135 Or App at 286 (adverse possessor grazed 16 head of cattle on property sufficiently to leave trail marks in the disputed area); *Dick Felix, Inc. v. Gillette*, 57 Or App 716, 720, 723-24, 646 P2d 629, *rev den* 293 Or 483 (1982) (adverse possessors grazed up to 40 head of cattle on disputed tract every spring and summer for 14 years and limed, disked and fertilized the grazing area). We simply cannot assess how open, notorious and continuous Schmalz's use of the property was on this record.

■     That means that the earliest conduct that could trigger the 10-year period of open, notorious, exclusive, continuous and hostile possession that the law requires is Schmalz's 1985 logging of the property. Assuming, without deciding, that the 1985 logging is sufficient, the question is whether there is clear and convincing proof that plaintiff continued to take hostile possession of the parcel in the succeeding 10 years. The only evidence in this record of plaintiff's additional use of the property from 1986 through the filing of the complaint that initiated this action is that "four or five times,

three or four times," he walked the property and that, for an unspecified number of times, he let Pickett graze an unspecified number of cows on a small patch of property that he characterized as insufficient to graze a single cow. There is no question that, where rural property is concerned, intermittent activity such as hunting and grazing can suffice to put an owner on notice of an adverse possession claim. Three to five walks over a period of seven years, however, cannot. Nor can grazing when there is a complete absence of evidence as to its nature and frequency.

In any event, even if plaintiff's walks and Pickett's grazing sufficed, the fact remains that, eight years after the 1985 logging, defendants asserted their sole and exclusive possession of the property, had the property surveyed, determined that they, in fact, did hold title to the disputed parcel and then logged it. Thus, at most, plaintiff has demonstrated the requisite hostile possession for a period of eight years. We conclude, therefore, that the trial court erred in entering judgment for plaintiff on his claims of adverse possession and on the timber trespass claim.

Judgment in favor of plaintiff on adverse possession claims reversed and remanded with instructions to enter judgment quieting title in defendants; judgment in favor of plaintiff on timber trespass claims reversed; otherwise affirmed.