Argued and submitted September 9, decision of Court of Appeals reversed,
judgment of circuit court affirmed December 30, 1999

## Jerry HOFFMAN
## and Amy Hoffman,
*Petitioners on Review,*

*v.*

## FREEMAN LAND AND TIMBER, LLC.,
John R. Freeman Family Trust and Credit Shelter Trust,
substituted for: Joan Freeman, Personal Representative
for Riley Freeman, Deceased,
John Doe Freeman, Jim Doe Freeman and
The Unknown Heirs,
*Respondents on Review.*

## (CC 95-084; CA A97665; SC S45847)

994 P2d 106

Kent A. Anderson, La Grande, argued the cause and filed the brief for petitioners on review.

J. David Coughlin, of Coughlin, Leuenberger & Moon, P.C., Baker City, argued the cause and filed the brief for respondents on review.

Andrea L. Bushnell and Matt Farmer, Salem, filed the brief for *amicus curiae* Oregon Association of Realtors.

GILLETTE, J.

---

* Appeal from Baker County Circuit Court, 156 Or App 105, 964 P2d 1144 (1998).

## GILLETTE, J.

This case arises out of defendants' assertion of title by adverse possession to a parcel of land. The trial court held that defendants did not meet their burden of proof to establish each element of adverse possession and entered judgment quieting title in favor of plaintiff, the record owner. The Court of Appeals reversed. *Hoffman v. Freeman Land and Timber, LLC.*, 156 Or App 105, 964 P2d 1144 (1998). On *de novo* review, that court concluded that defendants had used the land openly and continuously for the requisite 10-year period and, therefore, were entitled to a "presumption" that their use was hostile to the interests of plaintiff. *Id.* at 113. The Court of Appeals further held that the burden of proof then shifted to plaintiff to establish that defendants' use of the land was permissive and that plaintiff failed to meet that burden. *Id.* at 115. The court therefore quieted title in defendants. We allowed review and now reverse the decision of the Court of Appeals.

The Court of Appeals reviewed the judgment of the trial court *de novo* under ORS 19.415(3). We accept the facts as found by the Court of Appeals and limit our review to questions of law. ORS 19.415(4). The following facts are taken from the Court of Appeals' decision and other undisputed facts in the record. *See Faulconer v. Williams*, 327 Or 381, 391-92, 964 P2d 246 (1998) (using that approach).

The land in dispute is a 4.7 acre parcel of property, known as "Lot 20," located in Baker County, about 20 miles west of Baker City. Lot 20 is part of the Deerview Park Subdivision. Cathy Frohlich had owned the entire subdivided parcel since 1969, and it was officially approved in 1980. All the lots in the subdivision except Lot 20 lie to the west of a road commonly referred to as Alder Creek Road; Lot 20 lies to the east of that road.

Frohlich herself never made any use of any of the subdivision property, other than to clear timber and put in roads throughout the property to the west of Alder Creek Road as part of her effort to subdivide the land. Frohlich also had the property surveyed from 1977 to 1979 and used that survey to apply for approval of the subdivision.

Frohlich sold Lot 20 to plaintiff in 1983, and plaintiff remains the record owner of the property. At the time of the purchase, plaintiff lived in Lebanon, Oregon. He purchased the property as a future homestead site.

Defendants own a cattle ranch, known as the Bar C Bar Ranch (the ranch), which consists of approximately 5,000 acres and which—like Lot 20—lies generally to the east of Alder Creek Road. David Rasmussen acquired the ranch in 1954. He leased the property over the years to various of the individual defendants and their relatives. Rasmussen died in 1981, and defendants purchased the ranch from Rasmussen's estate in 1987. The true western border of the ranch is a straight north-south line, through which Alder Creek Road winds at various points. Lot 20 is adjacent to and west of defendants' property.

Lot 20 is part of a larger parcel of land used by defendants and their predecessors from time to time and known as the "Boy Scout Pasture." That larger parcel is estimated to consist of 700-800 acres. The entire Boy Scout Pasture, including Lot 20, is enclosed with a wire fence and has been for over 50 years. No artificial or natural boundaries separate Lot 20 from the rest of Boy Scout Pasture. Although defendants and their predecessors in interest have grazed cattle in Boy Scout Pasture in the warmer months since at least 1954, Lot 20 itself is poor ground, sparsely covered with pine grass and capable of sustaining only a single cow for a couple of days in the spring. Defendants and their predecessors in interest cleared brush from time to time on Lot 20 and occasionally repaired the wire fence. They also crossed Lot 20 every couple of weeks to reach other parts of Boy Scout pasture.

The present dispute arose in 1994, when plaintiff listed Lot 20 for sale. Defendants confronted plaintiff's realtor and announced their adverse possession claim. Plaintiff brought the present action to quiet title to Lot 20 and to eject defendants. Defendants asserted title by adverse possession and sought to eject plaintiff.

When the matter came to trial, the trial court ruled that defendants did not establish all the elements of their adverse possession claim. The trial court found that,

although Bar C Bar cattle occasionally might have grazed on Lot 20, that land never had been used by anyone for any significant activity. The court also found that the fence enclosing Lot 20 within the Boy Scout pasture was not a boundary fence but, instead, was one that followed the road for convenience, to keep cattle from straying onto the road. In addition, the ranch's use of Lot 20 for grazing also was for convenience; the court concluded that it simply was more convenient to let an occasional cow stray into the area than to make an effort to keep it out. Finally, the court held that Rasmussen's and defendants' occasional thinning of brush on the property was not significant enough to alert anyone that defendants were claiming the property. The court ruled that the burden of proof was on the party claiming title by adverse possession—in this case, defendants—and that defendants had not met that burden.

As noted, the Court of Appeals reversed the judgment of the trial court. The court stated that, to establish title by adverse possession, defendants must show by clear and convincing evidence that they had actual, open, notorious, exclusive, continuous, and hostile possession of the property for a 10-year period.[1] *Hoffman*, 156 Or App at 108. The court focused on the period between 1970 and 1980, the first full 10-year period for which there was testimony. *Id.* at 109. The court examined the evidence adduced at trial and concluded that defendants had demonstrated actual, open, notorious, and exclusive possession for the period between 1970 and 1980. *Id.* at 109-12. Turning to the issue of hostility, the court quoted the following passage from one of its own previous cases, *Meier v. Rieger*, 152 Or App 312, 318, 954 P2d 786 (1998):

> " 'If it is demonstrated that the disputed property was used openly and continuously for the requisite ten year period, hostility is presumed. * * * To rebut the presumption, there must be evidence either that the use was permissive or that the use did not interfere with the other parties' use of the property.' "

---

[1] The Court of Appeals noted that all parties agreed that the case should be evaluated under pre-1990 common law on adverse possession, rather than under ORS 105.620, an adverse possession statute enacted in 1989.

*Hoffman*, 156 Or App at 113 (citations omitted).

Having already concluded that the prerequisites for a presumption of hostile possession had been met, the court considered whether plaintiff had presented persuasive evidence that the use was permissive. *Id.* The court noted that Frohlich testified that she did not really know where the boundaries of her property lay until the subdivision survey was completed. *Id.* Therefore, the court reasoned, if Frohlich gave permission to Rasmussen to use the property, then she must have done so between the time when the survey was completed and 1980, in order to defeat defendants' adverse possession claim. *Id.* Frohlich testified that she had a conversation with Rasmussen in 1979 in which he acknowledged her ownership of Lot 20 and offered to purchase it or trade other property for it.[2] *Id.* Frohlich added that she and Rasmussen agreed to exchange property, but Rasmussen left town and then died before the transaction could be accomplished. *Id.* at 114.

The Court of Appeals held that evidence of Frohlich's conversation with Rasmussen was insufficient to rebut the presumption of hostility, because there was no evidence that Frohlich gave Rasmussen permission to continue to use the property or that she took action to stop him from using it. *Id.* Accordingly, the court held that defendants had satisfied the element of hostility through proof of continued use and, therefore, had met their burden of proving all the elements of their adverse possession claim. *Id.* at 115. As noted, we allowed plaintiff's petition for review.

■ To succeed on their adverse possession claim, defendants must establish, by clear and convincing evidence, that the use of the property was actual, open, notorious, exclusive, continuous, and hostile for a 10-year period.[3] *Faulconer*, 327

---

[2] The trial court ruled, over defendants' hearsay objection, that that part of Frohlich's testimony was admissible under OEC 804(3)(c), which provides an exception to the hearsay rule for statements against interest. The Court of Appeals affirmed the trial court's ruling. *Hoffman*, 156 Or App at 113-14. Although defendants argued in their brief on the merits that this court should "give no weight to this portion of Frohlich's testimony due to its prejudicial nature," we decline to revisit the Court of Appeals' evidentiary ruling.

[3] The parties devote considerable attention in their briefs to the issue whether this court's case law requires a claimant to establish the existence of an additional

Or at 388. Defendants bear a "heavy burden" to establish ownership by adverse possession. *Whitley v. Jacobs*, 278 Or 541, 547, 564 P2d 1057 (1977).

■■■ The requirement of actual use is satisfied if the claimants establish a "use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited." *Allison v. Shepherd*, 285 Or 447, 452, 591 P2d 735 (1979). The claimants' use of the subject property is open and notorious if it is "of such a character as to afford the [owner] the means of knowing it, and of the claim." *Hicklin v. McClear*, 18 Or 126, 138, 22 P 1057 (1889). Occasional pasturing or grazing of livestock may be sufficient to satisfy the requirement of actual use, if that is the use to which the land is best suited. *See Norgard v. Busher*, 220 Or 297, 305, 349 P2d 490 (1960) (so holding). Such limited activity may satisfy the requirement of open and notorious use, but only if it is significant enough to put an owner on notice that his or her title is being challenged. *See Reeves v. Porta*, 173 Or 147, 153, 144 P2d 493 (1944) ("the occasional pasturing of cows upon a piece of brushy wilderness is not enough to put an owner on notice that his title is being challenged by adverse possession").

■■■ The requirement of exclusive use is satisfied so long as the use is similar to that which would be expected of an owner in like circumstances. *Russell v. Gullett*, 285 Or 63, 67, 589 P2d 729 (1979). To be continuous, use of the property must be constant and not intermittent. As this court stated in *Reeves*, "the claimant * * * must 'keep his flag flying, and present a hostile front to all adverse pretensions.' " 173 Or at 153 (quoting *Olewine v. Messmore*, 128 Pa 470, 484, 18 A 495 (1889)). Nonetheless, where continuous use is premised upon the grazing of livestock, the requisite continuity may be

element, *viz.*, claim of right or color of title, to gain title through adverse possession. We recognize that it is possible to infer from certain prior decisions that "claim of right" or "color of title" is a separate element of an adverse possession claim. *See, e.g., Lee v. Hansen*, 282 Or 371, 375, 578 P2d 784 (1978) (adverse possession claimants must establish that they have had "actual, open, notorious, exclusive, continuous and hostile possession of the premises for the full statutory period of 10 years under claim of right or color of title"). As will be discussed in more detail *post*, however, it is more appropriate to view the concepts of "claim of right" and "color of title," not as a discrete requirement, but rather as an alternative way in which the element of hostility may be established.

established by showing continuous use during the pasturing season. *Miller v. Bushnell*, 275 Or 45, 48, 549 P2d 655 (1976).

■■■■ Finally, an adverse possession claimant must establish that the use is hostile to the interests of the owner. To establish the requisite hostility, a claimant must demonstrate a subjective intent to "possess[ ] the property intending to be its owner and not in subordination to the true owner."[4] *Faulconer*, 327 Or at 389; *see also Nedry v. Morgan*, 284 Or 65, 69-71, 584 P2d 1381 (1978) (to determine if claim is adverse or "hostile," court must inquire into subjective intent of adverse possession claimant). If an adverse possession claimant establishes an intent to appropriate land to him or herself, to the exclusion of all others, regardless of whether that claimant has actual title to that land, then the claimant is said to possess that land under "claim of right" or "claim of ownership." *Nedry*, 284 Or at 70-71. A deed or "color of title," where one exists, purporting to convey an interest in the disputed property is evidence of that claim of right, but even that evidence "can be overcome by acts or statements indicating that the [claimant] intends to claim more or less than [the claimant's] deed purports to convey." *Id.* at 70. In the absence of a claim of right, "the law will presume [an adverse possession claimant's] possession to be in subservience to the legal title." *Laurance v. Tucker*, 160 Or 474, 484, 85 P2d 374 (1938); *see also Robinson v. Leverenz*, 185 Or 262, 278, 202 P2d 517 (1949) (where one possesses land without knowing where the true boundary lies, but "acknowledge[s] that his possession is subordinate to any right that may belong to his neighbor," possession is permissive).

■■■■ Turning to the present case, there is no question that defendants and their predecessors had actual possession of Lot 20 during the time period considered by the Court of Appeals. The ranch used Lot 20 for the occasional grazing of cattle. Testimony at trial was undisputed that Lot 20 was unsuitable for most other uses and that use for grazing is one

---

[4] An exception exists if the adverse possession claimant establishes that possession was under an honest but mistaken belief of ownership, resulting, for example, from a mistake as to the correct location of a boundary. In that case, a court generally will presume that the use is hostile without inquiring into the adverse possession claimant's subjective intent. *Faulconer*, 327 Or at 389.

that an owner would make of land similar to Lot 20. Additionally, that use was exclusive, inasmuch as Frohlich admitted that she had made no use of Lot 20 whatsoever during the relevant time period. The Court of Appeals did not address directly the evidence supporting the continuity of the ranch's use of Lot 20. Nonetheless, one can infer from the Court of Appeals' summary of trial court testimony to the effect that the Boy Scout Pasture was grazed continuously during the pasturing season from 1970 to 1980, together with the fact that no natural or artificial barriers separate Lot 20 from the rest of Boy Scout Pasture, that defendants and their predecessors used Lot 20 continuously during that period.

The Court of Appeals concluded that defendants also satisfied the "open and notorious" requirement, because Frohlich, who admittedly had no actual knowledge of defendants' claim, had "constructive notice * * * of Rasmussen's occupation of the disputed area." *Hoffman*, 156 Or App at 112. By that statement, we understand the Court of Appeals to mean that defendants demonstrated at trial that the ranch's use of Lot 20 was of a character to put Frohlich on notice that her title to the property was being challenged. With that, the Court of Appeals dispensed with any inquiry respecting whether the use of the property was hostile and proceeded to shift the burden of proof to plaintiff to show that Frohlich had permitted the use. *Id.* at 113.

■ That analytical shift was misguided. As noted, the court based its reasoning on one of its prior cases, *Meier*, 152 Or App 312. That case erroneously imported into an adverse possession case the presumptions and burdens of proof applicable in cases involving prescriptive easements. *See Meier*, 152 Or App at 318-19 (citing *Nice v. Priday*, 137 Or App 620, 625, 905 P2d 252 (1995), *House v. Hager*, 130 Or App 646, 651, 883 P2d 261 (1994), and *Feldman v. Knapp*, 196 Or 453, 472, 250 P2d 92 (1952), all prescriptive easement cases). The Court of Appeals' use of prescriptive easement case law to support a presumption of hostility in favor of defendants and to place the burden of proof on plaintiff to show permissive use in this adverse possession case was error. As this court stated in *Feldman*:

"When title to real property is involved, no presumption of adverse possession arises from the character of the use over the statutory period that casts upon the owner of the land the burden of proof in showing the possession to have been permissive, or other than adverse, such as may be the case when an easement of way is claimed by adverse user. It is true that in both instances the possession or the use, as the case may be, must be actual, open, continuous, and adverse under a claim of ownership or claim of right. But the burden of proof resting upon a claimant does not shift in a case of adverse possession; whereas, the burden of proof, that is, the burden of going forward with the evidence, may shift in the case of adverse [prescriptive] user."

*Id.* 196 Or at 476.

The fact that defendants and their predecessors used Lot 20 openly and exclusively for an extended period of time is not sufficient to give defendants title by adverse possession, because their use of that property was not inherently inconsistent with Frohlich's rights as the owner. In improperly applying prescriptive easement principles in the context of an adverse possession of land, the Court of Appeals failed to extend its inquiry to whether defendants had presented clear and convincing proof of the remaining essential element of any adverse possession claim, *viz.*, hostility. If defendants did not establish that the use of Lot 20 was under a claim of right, *i.e.*, hostile, then their claim of adverse possession fails.

A review of the facts found by the Court of Appeals on *de novo* review shows that defendants did not carry their burden of proof to establish hostility. In fact, the only evidence bearing on that issue at all, Frohlich's conversations with Rasmussen about trading other ranch property for Lot 20, suggests that Rasmussen was aware during the relevant 10-year period that he did not own the property.

The Court of Appeals pointed to the following facts to support its conclusion that defendants' and their predecessors' use was open and notorious and, by extension, hostile: ranch hands regularly maintained the wire fence separating Lot 20 from Alder Creek Road to enclose the grazing land; that fence was permanent; there were signs of cattle, signs of timber thinning, and the presence of ranch hands from time

to time on Lot 20; and there were "no trespassing" signs posted along the fence next to the road abutting Lot 20 during the relevant period. *Hoffman*, 156 Or App at 112. We address each of those considerations next.

■ Even if the ranch's limited use of Lot 20 can be viewed as sufficiently "open and notorious" to put Frohlich on notice of an adverse possession claim, that use was not significant enough to constitute clear and convincing evidence that defendants and their predecessors used the land "intending to be its true owner and not in subordination to the true owner." *Faulconer*, 327 Or at 389. First, the evidence concerning the fence does not assist defendants in this case. Although, as the Court of Appeals noted, *construction* of a fence can suffice to establish hostility, *Hoffman*, 156 Or App at 111, at trial the evidence was undisputed that the fence *predated* Rasmussen's ownership of Lot 20. Moreover, the Court of Appeals did not dispute the trial court's characterization of the fence surrounding Lot 20 as a fence of convenience, maintained, not to establish a boundary, but to stop cattle from wandering onto the road. *Id.* at 111-12.

Neither are the facts that cattle and ranch hands occasionally crossed Lot 20 and that ranch hands occasionally thinned brush on that property persuasive evidence of intent. That evidence is equally consistent with use of the property as a convenience. As the trial court explained: "It was simply more convenient to occasionally thin out the trees on Lot 20, or let an occasional cow stray onto that corner." Finally, we do not believe that the presence of "no trespassing" signs along the fence surrounding Lot 20 tips the scales in favor of defendants. The trial court found, and the Court of Appeals did not find otherwise, that whatever signs were present were put in place "to keep out random hunters or mushroomers or the like, and not to exclude someone * * * who [was] claiming an ownership interest" in the property.

Taken together, the evidence demonstrating the ranch's various uses of Lot 20 over the years does not amount to clear and convincing evidence that defendants' or their predecessors' intended to claim that land against the true owner. Therefore, defendants failed to prove that their use of Lot 20 was hostile. Defendants did not meet their burden of

proving each of the elements of their adverse possession claim. We therefore reverse the contrary decision of the Court of Appeals and affirm the judgment of the circuit court quieting the title in plaintiff.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.