Argued and submitted April 12, 1999, reversed and remanded May 10, 2000

## Louis ZAMBROTTO
### and Tina Betty Zambrotto,
*Respondents,*

*v.*

## SUPERIOR LUMBER COMPANY, INC.,
### an Oregon corporation,
*Appellant.*

### (96CV3820CC; CA A101977)

4 P3d 62

K. Patrick Neill argued the cause for appellant. With him on the briefs was Hershner, Hunter, Andrews, Neill & Smith, LLP.

Jeffrey S. Miller argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant Superior Lumber Company, Inc. (Superior), appeals a judgment quieting title to a disputed parcel of land in plaintiffs Louis and Tina Betty (Betty) Zambrotto by adverse possession. On *de novo* review, ORS 19.415(3), we reverse and remand for entry of judgment in favor of Superior.

The Zambrottos and Superior own adjacent parcels of land in rural Douglas County. The Zambrottos' property lies to the north and Superior's to the south. There is an "old iron pipe" located 118 feet south of the boundary, or "deed line," between the two properties, on the western boundary of Superior's property. The disputed parcel forms a long, thin triangle that runs from the old iron pipe north to the deed line, then east along the deed line for approximately 2,400 feet, then southwest back to the old iron pipe. It is approximately 4.75 acres.

The terrain of the disputed parcel is steep and heavily wooded from its western border almost to its eastern border, where it becomes grassy. The southern boundary of the parcel is partially fenced, for approximately 700 feet, with barbed wire. There is no evidence as to who constructed the fence. The balance of that southern boundary is marked by a "blaze line," a series of cuts or marks on tree trunks normally used to mark a boundary line for logging purposes. There is

no evidence as to who placed the blazes. The evidence shows that no one was aware of the blaze line until this dispute arose.

The Zambrottos' property to the north was originally owned by the Dunkins, who acquired it by deed in 1928. The Dunkins lived there and raised livestock. Betty Zambrotto lived with the Dunkins from 1930 until 1946, when she married Louis Zambrotto. From 1946 to 1968, plaintiffs visited the Dunkins each summer for approximately six weeks. After 1968, the Zambrottos spent approximately half their time visiting the Dunkins. In 1993, when both of the Dunkins died, Betty inherited the property, and she executed a bargain and sale deed to Louis and herself as tenants by the entirety with a right of survivorship.

The Superior property to the south was previously owned by a timber company. Superior acquired it in 1991. The property description in the deed identifies the disputed parcel as being included in Superior's property. A 1994 Bureau of Land Management survey confirmed the location of the boundary.

The evidence of the use of the disputed triangular parcel, frankly, is sketchy. There was some logging within the disputed area. There are old stumps, some dating from the 1920s and some more recent. But there is no evidence as to who actually did the logging. The Dunkins had contracted for logging with the Dollar Lumber Company at some time, but there is no evidence that the logging involved the disputed parcel. Likewise there is evidence that, in 1966, the Dunkins agreed to sell timber to Superior, but again, none that the timber was to come from the disputed parcel.

From 1947 to 1968, the Dunkins—sometimes with the assistance of Louis—repaired the barbed wire fence that runs for 700 feet along the more than 2,400-foot southern boundary of the disputed triangular parcel. There is no evidence that the Dunkins used the fence as, or intended it to mark, a boundary of their property. From 1947 to 1968, the Zambrottos occasionally hiked the steep, forested part of the disputed property to hunt for rattlesnakes and that they were under the impression that the Dunkins owned the property.

In 1996, the Zambrottos attempted to log the disputed parcel. Superior objected, and the Zambrottos initiated this action to quiet title in the parcel, arguing that they had acquired it by common law and statutory adverse possession. According to the Zambrottos, the Dunkins' use of the property from 1928 to 1968 established all of the requisite elements of adverse possession. The trial court agreed with the Zambrottos and entered judgment quieting title accordingly.

On appeal, Superior argues that the trial court erred in concluding that the evidence is sufficient to establish all the requisites of acquiring property by adverse possession. We agree.

■■■ To establish a common-law claim of adverse possession, the Zambrottos must prove, by clear and convincing evidence, that their actual possession of the disputed premises was open, notorious, exclusive, hostile, and continuous for at least 10 years. *Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 559, 994 P2d 106 (1999). They bear a "heavy burden" to establish ownership by adverse possession. *Id.* (quoting *Whitley v. Jacobs*, 278 Or 541, 547, 564 P2d 1057 (1977)). ORS 105.620 also prescribes the elements of a statutory adverse possession claim, applicable to cases in which claims are filed, and interests are vested, after January 1, 1990. Under ORS 105.620, the Zambrottos must establish by clear and convincing evidence all of the common-law elements of adverse possession. They also must establish that their possession was taken under an honest belief that they owned the disputed parcel, that their belief continued throughout the vesting period, and that their belief had an objective basis and was reasonable under the circumstances. *Rayburn v. Coffelt*, 153 Or App 76, 81, 957 P2d 580 (1998).

In this case, Superior argues that there was insufficient proof of actual possession that was open and notorious. We address each of those elements in turn.

■ We begin with actual possession. Superior argues that there is no clear and convincing evidence of actual possession of the disputed parcel, only occasional hiking and hunting for rattlesnakes. That, Superior argues, is insufficient to warrant transferring title of the property on a theory of adverse possession. The Zambrottos argue that Superior

*stipulated* that they or the Dunkins have been in possession of the disputed parcel since 1928.

We find no such stipulation in the record. During the trial, counsel for the Zambrottos discussed the admission of the Dunkin and Zambrotto deeds into the record. Counsel for Superior commented *with respect to those deeds* that "[t]here is no dispute on the Zambrottos owning the property so we'll stipulate to save some time that they own the property that they claim to own." Thus, Superior did not stipulate that the Zambrottos own the disputed parcel. It stipulated only that they own the parcel of land described in the deed from the Dunkins. We turn, then, to the evidence in the record as to the use of the disputed property.

The requirement of actual use is satisfied if the Zambrottos establish their "use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited." *Allison v. Shepherd*, 285 Or 447, 452, 591 P2d 735 (1979). In this case, the property is rural, mostly forested property. There is evidence that the Dunkins and Zambrottos occasionally hiked in the disputed area and hunted for rattlesnakes. There is also evidence that the area had been logged. But there is no evidence as to who did the logging. There is evidence that the Dunkins and Zambrottos occasionally repaired the fence that ran along part of the southern boundary of the disputed parcel. We conclude that there is evidence of actual use, not much use, to be sure, but actual use nonetheless. As we have noted, the requirement of "actual" use is a qualitative one, determined by reference to the *type* of use that would be made by an owner of the land. Given the nature of the land, we conclude that hiking, rattlesnake hunting, and the like constitute actual use.

The question then becomes whether the use was open and notorious. To qualify as "open and notorious," the Zambrottos' use of the disputed area must have been " 'of such a character as to afford the [owner] the means of knowing it, and of the claim.' " *Hoffman*, 329 Or at 560 (quoting *Hicklin v. McClear*, 18 Or 126, 138, 22 P 1057 (1889)). Occasional use of rural property may suffice, "but only if it is significant enough to put an owner on notice that his or her title is

being challenged." *Hoffman*, 329 Or at 560; *see also Rayburn*, 153 Or App at 81 ("the acts of the person claiming title as an adverse possessor 'must be so open and exclusive as to leave no inquiry as to his intention, so notorious that the owner may be presumed to have knowledge that the occupancy is adverse' ") (quoting *Reeves et al v. Porta*, 173 Or 147, 155, 144 P2d 493 (1944)).

The Zambrottos contend that their use was sufficient to qualify as "open and notorious." In particular, they rely on evidence of logging in the disputed area, the existence of the blaze line marking the southern boundary of the area, evidence of the Dunkins and their occasional hikes and rattlesnake hunts in the area, and evidence that they regularly repaired the fence along part of the southern edge of the area.

As we have noted, however, although some logging occurred in the disputed area, there is no evidence as to who did it, certainly no evidence that the Dunkins or the Zambrottos did. Likewise, there is evidence of a blaze line, but none as to who put it there. Indeed, the record shows that the Zambrottos did not know of the existence or purpose of the blaze line until the initiation of this litigation. The Dunkins and the Zambrottos did occasionally use the disputed area for hiking and rattlesnake hunting, but the nature and frequency of those activities hardly were sufficient to put Superior or its predecessors on notice that their title was being challenged. Finally, as to the fence repair, the evidence likewise is insufficient. There is no evidence as to who constructed the fence. Originally it may have been constructed to prevent livestock from wandering between the properties, but there is no evidence as to the nature or frequency of any livestock grazing by the Dunkins or the Zambrottos. *See Nooteboom v. Bulson*, 153 Or App 361, 366, 956 P2d 1042, *rev den* 327 Or 431 (1998) (extent to which fence was needed to contain livestock relevant to assigning significance for adverse possession claim). Moreover, the fence extended to only a relatively small portion of the southern boundary of the disputed area. We conclude that, given the nature of the property and the scant evidence of its use, the occasional maintenance of a partial fence was insufficient to put Superior and its predecessors on notice that the Dunkins and the Zambrottos were mounting a title challenge.

We therefore conclude that, on *de novo* review, the evidence in the record is insufficient to establish, by clear and convincing evidence, all of the elements of either a statutory or a common-law adverse possession claim.

Reversed and remanded with instructions to enter judgment quieting title in defendant.