Argued and submitted January 14, affirmed April 14, petition for review denied July 20, 2004 (337 Or 247)

## Mark MANDERSCHEID
### and Tami Manderscheid,
### husband and wife,
### *Respondents,*

*v.*

## Jan DUTTON,
### *Appellant.*

## 01-08287-CV; A119095

88 P3d 281

Stanley E. Clark argued the cause and filed the briefs for appellant.

George W. Kelly argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment quieting title in a parcel of land that the trial court concluded plaintiffs had acquired by adverse possession. Defendant argues that plaintiffs failed to establish the elements of adverse possession as provided in ORS 105.620, in particular, that they either continuously possessed the disputed parcel for 10 years or that they reasonably believed the property was theirs. On *de novo* review, ORS 19.415(3) (2001);[1] *Gibbons v. Lettow*, 180 Or App 37, 42, 42 P3d 925 (2002), we affirm.

In 1977, defendant and her former husband purchased a 40-acre parcel of land in Mount Vernon. In 1980, they divided the property into four smaller parcels. Shortly after that, they sold the southernmost parcel, tax lot 2000, which was approximately nine acres. At the time of the sale, lot 2000 contained a mobile home that straddled the northern boundary of the property, so that half of the home lay on lot 2000 and half of it on defendant's property, lot 1900. The mobile home was serviced by a septic tank that was located north of the boundary, on defendant's property, lot 1900. There also existed a set of surveyor's stakes, along which the new owners immediately erected a fence, that ran from the southwest corner of lot 2000 north across the boundary and into lot 1900 approximately 234 feet, then east across the full width of lot 1900 at a slight angle so that, at the west end of lot 1900, it encroached on lot 1900 approximately 172 feet, then south across the boundary and back to the southern border of lot 2000, and finally across the full width of lot 2000 back to the southwest corner. The dispute in this case concerns the portion of lot 1900 that is contained within the fence.

The disputed parcel is roughly five acres in size and rural in nature, mostly dry, rocky, uneven, and, at places, steep. Its eastern area is open, growing mostly sagebrush and permitting limited winter pasturing of a few cows or horses.

---

[1] Because the judgment was entered on July 30, 2002, the amendments to ORS 19.415, Or Laws 2003, ch 576, § 88, are inapplicable to this case. Or Laws 2003, ch 576, § 90a; ORS 171.022 (2003).

In the middle is the mobile home, a garden, and the septic tank. To the west is more open "pasture" and a hilly canyon.

Defendant and her former husband separated in 1979, and defendant retained lot 1900. Meanwhile, in 1988, the Haags acquired lot 2000 and moved onto it on July 1, 1989. Before purchasing the property, the Haags viewed it personally. They saw the continuous fence and assumed that the fence enclosed the property that they were buying. From 1989 to the spring of 1997, the Haags grazed approximately 60 goats on the pasture areas of the disputed parcel north of the lot 2000 boundary but within the fence. They also grazed a few cows and raised several pigs. They used the garden and the septic tank as well. Among other things, they hauled manure "by the truck loads for the garden area." They also improved the fences on the property.

In 1997, the Haags decided not to keep goats. They boarded some cows for a month. In June or July, they began boarding horses, which grazed on the entire property, including the pasture areas of the disputed parcel. The horses grazed there for most of each year, although not without interruption. On at least one occasion, during the summer, the horses did not graze on the property for two to three months. There may have been an additional summer during which horses were not grazed. And, during one extremely cold winter, the horses were removed from the pasture. The Haags also placed a second mobile home on the property. Like the first, it straddled the boundary between lots 1900 and 2000.

On March 1, 2000, the Haags sold lot 2000 to plaintiffs. The Haags told plaintiffs that the property consisted of the land enclosed within the fence, that is, lot 2000 plus the disputed parcel. Shortly after buying the property, however, plaintiffs discovered that the actual boundary was different from what was enclosed within the fence. They then initiated this action to quiet title in the disputed parcel, alleging that they had acquired title to the parcel by adverse possession. Defendant argued that, among other things, there was insufficient evidence of continuous use or that the Haags possessed the property with a reasonable, honest belief that they

owned it. After a bench trial, and after the trial court personally viewed the disputed parcel, the court concluded that plaintiffs established all the elements of a statutory claim for adverse possession, as provided in ORS 105.620, and entered judgment quieting title to the disputed parcel in plaintiffs.[2]

On appeal, defendant first argues that plaintiffs failed to establish continuous use of the disputed parcel for 10 years. According to defendant, although the evidence demonstrates that the Haags used the disputed parcel continuously from 1989 to early 1997 for grazing goats, that period falls short of the 10-year period the statute requires. Defendant acknowledges that, from 1997 to 2000, the Haags also grazed horses, but she contends that, because there was a break of at least several months in the grazing, their use of the property was not continuous for a 10-year period. In support of her argument, defendant relies on *Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 994 P2d 106 (1999), which she reads to require proof of "constant" use. In any event, defendant argues, under ORS 105.620(2)(b), evidence of grazing alone is insufficient to satisfy the statutory elements of an adverse possession claim.

ORS 105.620 sets out the elements of a claim of adverse possession when a claim is filed and the interest vests after January 1, 1990. *Markovich v. Chambers*, 122 Or App 503, 506, 857 P2d 906 (1993). Among other things, the statute requires a person seeking to acquire title by adverse possession to prove that "[t]he person and the predecessors in interest of the person have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years." ORS 105.620(1)(a). In that respect, the statute is understood to restate the common-law elements of adverse possession. *Zambrotto v. Superior Lumber Co., Inc.*, 167 Or App 204, 208, 4 P3d 62 (2000). ORS 105.620(2)(b), however, provides that, "[a]bsent additional supporting facts, the grazing of livestock is insufficient to satisfy the requirements of subsection (1)(a) of this section." The

---

[2] The trial court concluded that plaintiffs also had established a common-law claim for adverse possession based on the use of the property before the Haags purchased lot 2000. Because we conclude that the trial court correctly ruled that plaintiffs prevailed on their statutory claim, however, we need not address any issues involving the common-law claim.

standard of proof is "clear and convincing evidence." ORS 105.620(1)(c).

In this case, the issue is whether plaintiffs established that they or their predecessors actually used the disputed parcel for the required 10-year period. In *Hoffman*, the Supreme Court explained that, "[t]o be continuous, use of the property must be constant and not intermittent." 329 Or at 560. The court, however, qualified that statement as to cases in which the use at issue involves grazing of livestock: "Nonetheless, where continuous use is premised upon the grazing of livestock, the requisite continuity may be established by showing continuous use during the pasturing season." *Id.* at 560-61.

In *Terry v. Timmons*, 282 Or 363, 578 P2d 405 (1978), the court similarly explained that, where the hostile use involves grazing of livestock, "continuity" may be satisfied by intermittent grazing that is consistent with the nature of the property. In that case, the claimant grazed horses on the disputed property several months each year. The court concluded that the intermittent grazing was sufficient in light of the nature of the property:

> "The fact that the horses grazed upon the land for only a few months each year did not break the continuity of defendants' claim. Defendants were only required to use the land as an average owner of the particular type of land would use it, even though that use might have permitted intervals in which the land was not used at all. In this case, the land was not irrigated and there was only enough grass for horses to graze for those few months."

*Id.* at 369 (citation omitted).

In this case, as in *Terry*, the disputed parcel is mostly dry and rocky, is not irrigated, and permits pasturing only a few horses or cows in the spring and winter. The Haags' use of the property for grazing horses is thus consistent with the nature of the property, and the two- to three-month intervals during which there was a break in that use did not disturb the continuity of plaintiffs' claim.

■      Defendant argues that, even if the grazing was continuous for 10 years, under ORS 105.620(2)(b), it is insufficient to establish the required use of the disputed parcel. As we have noted, that statute does provide that the grazing of livestock, *by itself*, is insufficient to establish a statutory adverse possession claim. But the statute provides that grazing of livestock, combined with "additional supporting facts," is sufficient. ORS 105.620(2)(b). In this case, in addition to the grazing of livestock, there is evidence that the Haags occupied the mobile home, used the septic tank, tended the garden—including moving "truck loads" of manure onto the property—maintained the fences, and built a second home on the disputed parcel. This is not a case in which adverse possession is predicated on the grazing of livestock alone.

■      Defendant next argues that, even if plaintiffs established the common-law elements of their adverse possession claim, they failed to establish the additional statutory element that they or their predecessors in interest occupied the property with a reasonable and honest belief that the property was theirs. According to defendant, a reasonable person should have known that the property enclosed within the fence was too large to comprise lot 2000.

ORS 105.620(1)(b) requires an adverse possession claimant to prove, in addition to the common-law elements of section (1)(a), that,

"[a]t the time the person claiming by adverse possession or the person's predecessor in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:

"(A)   By the person and the person's predecessor in interest, continued throughout the vesting period;

"(B)   Had an objective basis; and

"(C)   Was reasonable under the particular circumstances[.]"

ORS 105.620(1)(b). In this case, there is no dispute that the Haags first entered into possession believing that they were the actual owners of the disputed parcel. The only issues in

contention are whether their belief had an objective basis and was reasonable.

As we have noted, the Haags viewed the property personally before buying it. They saw the continuous fence and the mobile home that was located in the middle of the fenced-in property. They did not know that the home was located on the boundary, and there were no external indicators that the lot was something other than the area enclosed by the fence. It did not occur to them that the true boundary ran through the middle of the buildings in the center of the property. Defendant insists the Haags should have known that the parcel enclosed within the fence was too big to be lot 2000. Sharon Haag testified, however, that she did not know precisely how big an acre is. Moreover, the difference between a 9-acre lot and a 14-acre lot is not great, given the uneven nature of the property, which made it difficult for anyone to determine precisely the size of the parcel.[3] Under the circumstances, we cannot say that, as a matter of law, the parties' belief about the extent of the property that they purchased lacked an objective basis and was unreasonable.

Defendant advances other arguments as well, which we reject without further discussion.

Affirmed.

---

[3] Even defendant's own witness, a professional surveyor, testified that it would not be immediately obvious to him that the area surrounded by the fence was greater than approximately 9 acres and that it generally is difficult to estimate acreage from simple observation.