Argued and submitted September 28, 2004, on appeal, reversed and remanded for entry of judgment quieting title in plaintiffs; affirmed on cross-appeal March 2, 2005

William F. CLARK
and Evelyn Clark,
*Appellants - Cross-Respondents,*

*v.*

RANCHERO ACRES WATER COMPANY,
*Respondent - Cross-Appellant.*

00-2601; A121688

108 P3d 31

George B. Heilig argued the cause for appellants - cross-respondents. With him on the briefs was Cable Huston Benedict Haagensen & Lloyd, LLP.

Gary E. Norman argued the cause and filed the brief for respondent - cross-appellant.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Deits, Judge pro tempore.

LANDAU, P. J.

---

* Brewer, C. J., *vice* Leeson, J. pro tempore.

**LANDAU, P. J.**

In this adverse possession case, plaintiffs seek to acquire an area of land that is adjacent to their own property but to which defendant has record title. The trial court concluded that plaintiffs had established entitlement to only a portion of the area; the court awarded plaintiffs an easement over a driveway located on the disputed area and awarded them title to the small parcel of land that lies between the driveway and plaintiff's property. On appeal, plaintiffs assert that the trial court erred in failing to declare their right to the entire disputed area. Defendant cross-appeals, arguing that the trial court erred in awarding plaintiffs any of the area. On *de novo* review, ORS 19.415(3) (2001), we agree with plaintiffs that they are entitled to the entire disputed area of land and remand for entry of judgment quieting title to the entire area in plaintiffs.

Richard Draper once owned a parcel of land located in Millersburg. The parcel included two tax lots, 3940 and 3905. Both lots are bordered on the east by Waverly Drive. Lot 3940 measures approximately 105 by 208 feet and is the northern of the two lots. Lot 3905 measures approximately 100 by 177 feet and lies directly to the south of lot 3940.

In 1971, Draper built a garage on lot 3940 and used it as a shop. The following year, he added a duplex, located directly between the garage and Waverly Drive. He also added a driveway that ran from the garage directly south onto lot 3905 and then east to Waverly Drive. Directly to the south and parallel to the driveway on lot 3905 is a fence and a ditch, approximately 55 feet south of the lot 3940 boundary. To the south of the fence and ditch line is a pump house that delivers water through underground pipes, the exact location of which was not established at trial.

In 1975, Draper sold lot 3940 to a third party. Five years later, Draper sold lot 3905 to defendant, a water company.

Map of Properties
(Not to Scale)

In 1990, Bill Clark purchased lot 3940 as part of a larger five and one-half acre parcel that included nine other lots and their residential improvements, mostly north of lot 3940, on both sides of Waverly Drive, for the purpose of maintaining those properties as rentals. The deed correctly described the boundaries of lot 3940 by metes and bounds. At the time of the purchase, the grass to the north of the fence and ditch line was mowed, and the grass to the south of that line was long and unmowed. Clark assumed, based on the physical appearance of the property, that the fence and ditch line was the southern boundary of lot 3940. The prior owner reinforced that assumption when, shortly after the sale, he told Clark that lot 3940 property extended to the fence and ditch line.

From 1990 through most of 1997, Clark rented the house on lot 3940 to tenants and used the garage as a maintenance shop and for storage. From June 1990 to September 1997, Clark's use of the disputed area between the actual boundary and the fence and ditch line consisted of regularly mowing the grass up to the fence and ditch line and using the driveway for access to the garage at least weekly. He also used the disputed property to the south side of the garage and west of the driveway for outside storage. Clark's tenants also used the driveway as a turn-around and parking area and used the grassy area between the driveway and the house as part of their yard.

In the meantime, defendant maintained the pump house and mowed grass south of the fence and ditch line only when necessary to eliminate any fire hazard. During that same time, defendant did not use the property north of the fence and ditch line and never objected to Clark's or his tenants' use of that property.

In September 1997, Clark sold lot 3940 to his parents, who are the plaintiffs in this case. The deed once again correctly described the lot by metes and bounds and stated its correct depth. Clark, however, told plaintiffs the same thing that he had been told by his predecessor: Lot 3940 extends to the fence and ditch line. After plaintiffs purchased lot 3940, they began using and maintaining the driveway as well as the grassy areas on both sides of it and behind it. They also established and maintained a garden in the area between the driveway and the fence and ditch line. In 1998, plaintiffs even added fill to that area, and, on one occasion, one of defendant's members warned plaintiffs not to let the fill spill to the south side of the fence.

In September 2000, defendant's president wrote a letter to plaintiffs informing them that they were using the land north of the fence and ditch line without permission. The letter requested that plaintiffs abandon the property once their garden was finished for the year. Defendant gave plaintiffs permission to continue using the driveway until further notice. That was the first time that plaintiffs and Clark actually became aware that the disputed area was not a part of lot 3940. Defendant later built a fence on the actual lot line and fenced the driveway.

Plaintiffs then initiated this action for adverse possession of the entire disputed area of property located between the actual boundary and the original fence and ditch line. In the alternative, they claimed an easement by prescription or by implication for the use of the driveway. They also claimed by adverse possession the smaller area located between the driveway and lot 3940. As we have noted, the trial court concluded that plaintiffs had established their claim of adverse possession as to the small area between the driveway and their own property, but not as to the balance of the disputed area. According to the trial court, although

plaintiffs established all the elements of an adverse possession claim as to the smaller area, they did not establish sufficiently regular use of the balance of the area to put defendant on notice that title was being challenged. The trial court also concluded that plaintiffs had established their entitlement to an easement by implication for the use of the driveway.

On appeal, plaintiffs contend that the trial court erred in concluding that they had not established their claim of adverse possession as to the entire area between their own property and the fence and ditch line. Defendant argues that the trial court correctly determined that plaintiffs failed in their proof. In particular, defendant contends that plaintiffs failed to establish sufficient use of the property between 1990 and 2000 to satisfy the element of "hostility" that the statute requires. At best, defendant argues, plaintiffs established their mistaken belief of ownership, which it contends is not sufficient to satisfy the hostility requirement. In addition, defendant argues, plaintiffs failed to establish their honest and reasonable belief that, in fact, they were the owners of the disputed area. According to defendant, plaintiffs' and Clark's beliefs of ownership "was probably not honest, and was certainly not reasonable."

■ This case is governed by ORS 105.620, which applies to adverse possession claims that vest after January 1, 1990. That statute provides:

"(1) A person may acquire fee simple title to real property by adverse possession only if:

"(a) The person and the predecessors in interest of the person have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years;

"(b) At the time the person claiming by adverse possession or the person's predecessor in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:

"(A) By the person and the person's predecessor in interest, continued throughout the vesting period;

"(B)   Had an objective basis; and

"(C)   Was reasonable under the particular circumstances; and

"(c)   The person proves each of the elements set out in this section by clear and convincing evidence.

"(2)(a)   A person maintains 'hostile possession' of property if the possession is under claim of right or with color of title. 'Color of title' means the adverse possessor claims under a written conveyance of the property or by operation of law from one claiming under a written conveyance."

In brief, the statute requires proof of the elements of a common-law adverse possession claim and, in addition, proof of an honest belief of ownership that has an objective basis and is reasonable. *Zambrotto v. Superior Lumber Co., Inc.*, 167 Or App 204, 208, 4 P3d 62 (2000).

We begin with the parties' arguments about whether plaintiffs established the element of hostility. Plaintiffs argue that, with respect to that element of their claim, ORS 105.620 merely incorporates existing law. As a result, they argue, their mistake as to their ownership of the disputed area suffices to prove the requisite hostility. Defendant argues that, because the statute now requires an actual honest and objectively reasonable belief of ownership, ORS 105.620 "completely eliminates the doctrine of pure mistake."

ORS 105.620, as we have observed, requires proof of hostile possession. It also defines "hostile possession" as holding property "under claim of right or with color of title." ORS 105.620(2)(a). The statute thus tracks precisely the common-law treatment of the same element. *Hoffman v. Freeman Land and Timber, LLC*, 329 Or 554, 560 n 3, 994 P2d 106 (1999), for example, plainly describes the concepts of "claim of right" and "color of title" as "alternative way[s] in which the element of hostility may be established" in a common-law adverse possession claim. *See also Knapp v. Daily*, 96 Or App 327, 330, 772 P2d 1363 (1989) (common-law elements of adverse possession include "possession of the property under color of title or a claim of right"). Ordinarily, a "claim of right" is established by evidence of a claimant's "intent to appropriate land to him or herself, to the exclusion of all others,

regardless of whether that claimant has actual title to that land[.]" *Hoffman,* 329 Or at 561. An "exception" to the requirement of actual, subjective, hostile intent exists

> "if the adverse possession claimant establishes that possession was under an honest but mistaken belief in ownership, resulting, for example, from a mistake as to the correct location of a boundary. In that case, a court generally will presume that the use is hostile without inquiring into the adverse possession claimant's subjective intent."

*Id.* at 561 n 4.

As we have noted, in ORS 105.620, the legislature essentially codified the existing common-law elements of an adverse possession claim and then created the additional element requiring proof of an actual, reasonable mistake as to ownership. *Zambrotto,* 167 Or App at 208. In adopting the existing common-law elements, the legislature was presumably aware of the case law describing the proof that will suffice to establish each of those elements. *See Weber and Weber,* 337 Or 55, 67-68, 91 P3d 706 (2004) (addressing analogous situation in domestic relations context). The presumption is especially reasonable when, as in this case, the legislature expressly referred to common-law concepts when defining relevant statutory terms. *State v. Couch,* 196 Or App 665, 667-78, 103 P3d 671 (2004).

Presumably, therefore, when the legislature referred to the element of hostility in ORS 105.620, and when it defined hostility in terms of the common-law concepts of "claim of right" and "color of title," the legislature intended the element of hostility to retain its common-law meaning. That would include the common-law notion that a "claim of right" may be established by proof of a mistaken belief of ownership. Defendant certainly has proffered no evidence that the legislature intended otherwise. We therefore turn to whether plaintiffs proved hostile possession by pure mistake.

In *Faulconer v. Williams,* 327 Or 381, 964 P2d 246 (1998), the Supreme Court addressed how "pure mistake" may suffice to establish hostile possession. The court explained that "pure mistake exists where a deed correctly identifies the boundaries of the land conveyed, but the person taking property under that deed actually occupies other

property that he mistakenly believes is covered by the deed." *Id.* at 390. Quoting an earlier opinion, the court explained that the rationale for the rule is that " 'the intent derived directly from the physical senses, *i.e.*, the intent to claim the land actually occupied, should be regarded as overriding the less immediately effective intent to hold in conformity with the deed.' " *Id.* (quoting *Norgard v. Busher*, 220 Or 297, 302, 349 P2d 490 (1960)).

The record in this case shows that the deed correctly describes the actual boundary between lots 3940 and 3905. It also shows that the parties were mistaken as to the location of that boundary on the land itself. Consistently with that mistake, the parties maintained the properties as if the boundary were actually located at the fence and ditch line. We conclude that plaintiffs established the element of hostile possession by evidence of pure mistake as to the location of the true boundary.

■■ We next address whether the trial court correctly concluded that, nevertheless, plaintiffs' use of the disputed area to the fence and ditch line was insufficient to satisfy the requirement that their use be open and notorious. To establish use that is "open and notorious," plaintiffs must prove that they possessed the land in dispute as would an ordinary owner of the same type of land, taking into account the uses for which the land is suitable. *Allison v. Shepherd*, 285 Or 447, 452, 591 P2d 735 (1979).

The record shows that, from 1997 through 2000, plaintiffs used the disputed area extensively, even establishing and maintaining a garden and adding fill to the grassy area between the driveway and the fence and ditch line. There appears to be no dispute about the sufficiency of plaintiffs' proof as to those years. That leaves the period from 1990 to 1997. The record shows that, during that period, Clark and his tenants regularly used the driveway for access to the garage. They also used the driveway as a turnaround and as a parking area. They used the area to the south of the garage and west of the driveway as storage. They also used the grassy area to the south of the driveway as a yard, regularly mowing it as would the owner or a tenant of the property under normal conditions of use.

The trial court acknowledged the foregoing facts, but concluded nonetheless that they were insufficient to constitute open and notorious use because "[d]efendant was not making much use of the surface of the real property other than mowing the grass [south of the fence and ditch line] and maintaining the pump station." According to the trial court, the fact that defendant did not use its property very much meant that it would not likely have noticed plaintiffs' use of the disputed area. The test of open and notorious use, however, is whether the adverse possession claimant is making use of *the disputed area* in ways that are consistent with the ordinary use of *that property*. It does not concern whether defendant's use of its own property is such that it might not notice; otherwise, a claim for adverse possession would never lie against an absentee owner or an owner of rural acreage that is ordinarily put to only occasional use. We conclude that the trial court erred in determining that plaintiffs' and their predecessors' use of the disputed area was not sufficient to establish their open and notorious use.

■    We turn, then, to whether plaintiffs established the element required by the statute in addition to proof of the elements of common-law adverse possession. ORS 105.620 requires proof of (1) a mistaken belief of ownership; (2) that has an objective basis; and (3) that is reasonable under the circumstances. The record in this case shows, as we have already found, that plaintiffs in fact were mistaken about who owned the entire area between the southern boundary of lot 3940 and the fence and ditch line. That mistaken belief had an objective basis. To begin with, the previous owner told Clark that he had purchased the entire area up to the fence and ditch line. Moreover, the driveway that ran across the disputed area was plaintiffs' exclusive means of access to their garage. Also, the fence and ditch line to the south of the driveway was the apparent boundary line. Both parties treated it as such; plaintiffs and their predecessors used the disputed area down to the fence and ditch line and no farther, while defendant used and maintained the land up to the fence and ditch line and no farther. In 1998, in fact, one of defendant's members warned plaintiffs not to let their fill activity spill onto the area *south* of the fence and ditch line.

■ That leaves the question whether plaintiffs' and their predecessors' beliefs were reasonable under the circumstances. Defendant argues that, as a matter of law, such beliefs cannot be reasonable in light of the accurate descriptions of the parties' boundaries in the deed. We addressed, and rejected, a similar argument in *Manderscheid v. Dutton*, 193 Or App 9, 88 P3d 281, *rev den*, 337 Or 247 (2004). In that case, the adverse possession claimants were mistaken as to the location of a boundary line; as in this case, the claimants thought their property extended to a fence that was some distance beyond the actual boundary. The defendant argued that, even if the claimants honestly believed that they owned the property, that belief was not reasonable in light of an accurate description in the deed. We concluded that an accurate description in a deed does not necessarily make a mistaken belief as to boundaries unreasonable; whether a mistaken belief is reasonable will depend on the circumstances of each case. *Id.* at 16. In that case, we noted that the size of the property in relation to the discrepancy, the nature of the land, the experience of the parties, and what they had been told all bear on the reasonableness of the belief. *Id.*

In this case, the discrepancy is small in relation to the size of plaintiffs' land. Clark purchased lot 3940 as part of a larger parcel of over five acres. The fact that the deed contained a lengthy—if accurate—metes and bounds description of that acreage does not necessarily mean that plaintiffs were unreasonable in failing to notice a 55-foot discrepancy. Particularly in light of the nature of the property, the location of the driveway in relation to the garage, the representations of the prior owner, and the warnings of one of defendant's own members about not using the property *south* of the fence and ditch line, we conclude that plaintiffs' honest belief of ownership was reasonable under the circumstances. We therefore conclude that plaintiffs established their entitlement to the entire disputed area from the southern boundary of lot 3940 to the original fence and ditch line.

On appeal, reversed and remanded for entry of judgment quieting title in plaintiffs; affirmed on cross-appeal.