Argued and submitted October 31, 1996, reversed in part and remanded
for new trial; otherwise affirmed February 19, 1997

# STATE OF OREGON,
*Respondent,*

*v.*

# JIMMY LEE CUSTER,
*Appellant.*

(91P-3244; CA A89949)

934 P2d 455

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief was Diane L. Alessi, Chief Deputy Public Defender.

Jonathan Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

Defendant appeals his convictions for possession of a controlled substance and unlawful possession of a destructive device. ORS 475.992(4)(b); ORS 166.382(1)(b). He argues that the trial court erred when, following remand from this court, *State v. Custer*, 126 Or App 431, 868 P2d 1363 (1994) (*Custer I*), it allowed the state to introduce evidence during retrial that *Custer I* held should have been suppressed. We agree that the trial court's actions on remand were contrary to our holding and directions in *Custer I*. Accordingly, we reverse the convictions and remand for a new trial.

As in the first appeal, the issue before us pertains to whether the trial court should have suppressed certain evidence obtained during a police inventory of defendant's vehicle. In *Custer I*, defendant had moved to suppress the evidence, arguing that the inventory was an unlawful search under Article I, section 9, of the Oregon Constitution.[1] The trial court denied the motion, and defendant was tried and convicted of unlawful possession of a controlled substance, unlawful possession of a destructive device and unlawful possession of a firearm. On appeal, we reversed the convictions for unlawful possession of a controlled substance and unlawful possession of a destructive device, and remanded them for a new trial, concluding that the evidence pertaining to those crimes should have been suppressed because it was obtained pursuant to an unlawful search. We explained that, under *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984), there is a three-pronged test for determining the validity of an inventory of impounded property under Article I, section 9:

"First, the property must be lawfully impounded. Second, the inventory

" 'must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory.' [*Atkinson*, 298 Or at 10].

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

"Third, the officer conducting the inventory must adhere to the established policy and procedures." *Custer I*, 126 Or App at 434.

We then held:

"Apparently, both parties and the trial court assumed that the inventory of defendant's car was conducted 'pursuant to [a] properly authorized administrative program.' *Nonetheless, even when the issue is not raised by the parties, a reviewing court must make a determination as to the authority under which the police impounded and inventoried the vehicle, as a prerequisite to declaring the inventory valid.* The state apparently finds sufficient authority in the department policy. However that internal policy cannot properly serve as the source of authority for the inventory. Before executive agencies * * * may impound and inventory vehicles, 'they must have explicit authority from outside the executive branch.' *Nelson v. Lane County*, 304 Or 97, 104, 743 P2d 692 (1987). * * * Thus, in the instant case, it is imperative that the state identify a source of extra-executive authorization, such as a statute or an ordinance, that allows Dallas law enforcement officers to inventory vehicles under the circumstances presented here and that expressly delineates the purposes and limits of the officers' authority.

"The state does not point to, and we have been unable to locate, any such provision of law. * * * Based on the Supreme Court's clear directives, * * * we are compelled to conclude that the inventory search of the contents of defendant's car was unlawful under Article I, section 9. *Accordingly, the methamphetamine and the bomb components should have been suppressed.*" *Custer I*, 126 Or App at 435-36 (some citations omitted; emphasis supplied).

The state did not petition this court for reconsideration of our decision in *Custer I*.[2] It did file a petition for review

---

[2] ORAP 6.25(1), which was in effect at the time of our decision in *Custer I*, provides in part:

"A party seeking reconsideration of a decision of the Court of Appeals shall file a petition for reconsideration. A petition for reconsideration shall be based on one or more of these contentions:

"* * * * *

"(ii) A claim of error in the procedural disposition of the appeal requiring correction or clarification to make the disposition consistent with the holding or rationale of the opinion or the posture of the case below;

"* * * * *

with the Oregon Supreme Court but withdrew its petition before that court acted.[3]

On remand, the state argued to the trial court that our decision in *Custer I* was incorrect. In a pretrial motion to the trial court, the prosecutor argued:

> "I have basically two positions to make. One is that the State should be permitted to reopen then the motion to suppress, to litigate that issue that the Court of Appeals has found to be critical. And secondly, that basically we have a two-pronged argument; one is that the Court of Appeals was simply incorrectly construing *State versus Atkinson* and other Supreme Court authority.

> "And secondly, that even if the Court of Appeals opinion in this case is correct on the law, that, in fact, the Dallas Police Department policy which was previously received in 1991, does have extra executive blessing outside of the police department itself. And we're prepared to offer evidence on that issue.

> "And then it would be our position that the Court should then re-examine its motion to suppress and either allow the motion and/or sustain the earlier ruling and re-enter the conviction."

Defense counsel responded that *Custer I* precluded such reconsideration:

> "Well, your Honor, in the plain language of the Court of Appeals opinion it says on those—the two issues that it found items should have been suppressed or reversed and remanded for trial, and doesn't make any provision for reopening the motion to suppress.

> "* * * * *

> "But to reopen would be, I guess from [defendant's] view, tantamount to allowing the State to come back after a successfully filed motion to suppress where the Court has ruled both the affidavit and search warrant case, for example, doesn't present probable cause, and then to come back

---

"(v) A claim that the Court of Appeals erred in construing or applying the law."

[3] The state, at oral argument in this appeal, explained that its petition for review in *Custer I* pertained to whether we had erroneously held that an inventory must be authorized by some extra-executive authority.

and say, well, now we'll put back some more pieces that would supply that probable cause."

The trial court granted the state's request to revive and revisit the motion for suppression, stating:

"I guess my feeling is, if we go back to trial, it was your motion to suppress that should have been allowed. However, when we go to trial, if the State has a different theory or a different basis to try to get that evidence in, they would be able to put that forward.

"I don't want [defendant] to lose any right he has to attempt to prohibit the introduction of evidence by bypassing a motion to suppress or continuing his theory of the motion to suppress. But I think the State would have the opportunity to try to lay additional foundation to get that evidence in."

The state then introduced evidence that it argued was sufficient to show extra-executive authority for the inventory. The trial court concluded that the additional evidence was sufficient to meet the second prong of the *Atkinson* test and denied defendant's motion to suppress. Defendant was again convicted.

On appeal, defendant assigns error to the trial court's ruling allowing the state to "reopen" the motion to suppress proceedings. He argues that the court failed "to give effect to this court's remand instruction" in *Custer I* and that it "failed to give effect to the 'law of the case.' "[4] The state responds that our analysis and direction in *Custer I* did not preclude the trial court, on remand, from revisiting the motion to suppress. The state argues, particularly, that the "law of the case" doctrine did not prevent the trial court from considering the state's additional evidence on remand, because "the legal issue on remand was not the same one already decided by this court." Thus, the state asserts, given our *"sua sponte"* consideration of the extra-executive authority issue in *Custer I*, 126 Or App at 435-36, "neither the language of this court's remand nor any other doctrine of law prohibited the trial court from giving the state a fair chance

---

[4] Defendant does not assert that the evidence of extra-executive authority that the state submitted on remand was insufficient to satisfy *Atkinson*'s requirements.

to put on its proof [of extra-executive authority] at the hearing following remand." We disagree.

■ Our analysis and instruction in *Custer I* were conclusive and did not admit to any reopening or reconsideration on remand of the motion to suppress. We held that the state, as the proponent of a warrantless search, had the burden of demonstrating that each of the prerequisites of a valid inventory had been satisfied and that, because the state had not met its burden, the search was "unlawful under Article I, section 9." *Id.* at 436. We then directed: "The [evidence] should have been suppressed." *Id.* We did *not* remand with instructions for the court to take additional evidence on the "extra-executive authority" element. As noted, although the state could have sought modification of our holding, via a petition for reconsideration—and, particularly, could have requested that our opinion be modified to permit the submission of evidence on the "extra-executive authority" condition—it did not do so. *See* ORAP 6.25(1)(ii) (quoted in note 2 above).

*State v. Statham*, 62 Or App 841, 662 P2d 368 (1983) (*Statham II*), resolved the issue now presented. That case had been before us previously in *State v. Statham*, 55 Or App 646, 639 P2d 684 (1982) (*Statham I*). In *Statham I*, we had held, in reversing the denial of a suppression motion, that police officers had unlawfully searched a duffel bag in violation of the defendant's Article I, section 9, rights.[5] We concluded that the evidence that was seized as a result of that search "should have been suppressed" and reversed and remanded for a new trial. 55 Or App at 652. On remand, the state moved to admit the evidence that we had held should have been suppressed and to reinstate the conviction. 62 Or App at 844. It argued that, because of two federal decisions, one that was decided during *Statham I*'s pendency and another that was decided after our decision in *Statham I*, the search was legal. *Id.* The trial court granted that motion, and the defendant appealed.

Thus, as in this case, the issue before us in *Statham II* was whether, based on our instructions in *Statham I*, the

---

[5] Our opinion centered on whether the defendant had any possessory rights in the duffel bag such that he could assert a violation of his Article I, section 9, rights. *Statham I*, 55 Or App at 649-51.

trial court erred in reconsidering the motion to suppress and in admitting evidence that we had held should have been suppressed. We first rejected the state's argument that ORS 133.673(2)[6] authorized the court, at the state's request, to reconsider the suppression motion:

> "The statute authorizes a defendant to renew his motion to suppress if it has been denied. It does not authorize the state to move for reconsideration of defendant's motion to suppress after its denial by the trial court has been reversed by this court." *Statham II*, 62 Or App at 845.

We then concluded that, in the absence of statutory authorization,

> "there [was] no basis for the trial court not to follow the directions of this court. ORS 138.270(2) provides:
>
> > " 'If by the judgment of the appellate court a new trial is ordered from the entry of the judgment in the court below, the action is to be deemed pending and for trial in such court, according to the directions of the appellate court.'
>
> "In [*Statham I*], we remanded to the trial court to give defendant a new trial 'according to the directions' of this court, which included that 'the [evidence] should have been suppressed.' *The trial court must follow those directions.*" *Statham II*, 62 Or App at 845-46 (emphasis supplied).

The same reasoning applies here. Here, as in *Statham I*, we reversed and remanded for a new trial with the direction that "the [evidence] should have been suppressed." *Custer I*, 126 Or App at 346. That holding was controlling as law of the case. The trial court erred in not following that instruction.[7]

---

[6] ORS 133.673(2) provides:

"A motion to suppress which has been denied may be renewed, in the discretion of the court, on the ground of newly discovered evidence, or as the interests of justice require."

[7] The state argues that *Statham II* is distinguishable from this case, because, in the *Statham* cases, the state had attempted on remand to raise a new theory for the validity of its search, even though that theory could have been raised in the original suppression proceeding. However, the significance of ORS 138.076 in *Statham II* is identical to its significance here. The trial court was bound by our holding and direction.

■ The state argues, nevertheless, that this case is distinguishable from *Statham* in that we "*sua sponte*" "raised and decided an entirely different issue" in concluding that the search was illegal, and, thus, that our holding did not foreclose the trial court from considering evidence pertaining to that issue. The state points, particularly, to *State v. Boots*, 315 Or 572, 577, 848 P2d 76, *cert den* 510 US 1013 (1993), as an example of a case where the court's remand was broad enough to afford the trial court discretion in what issues to reconsider. *Boots* is inapposite. There, the defendant argued that the trial court had incorrectly limited the issues on remand. The Supreme Court disagreed, stating that its instructions had "neither expressly *required* the trial court to retry defendant on every element of an aggravated murder charge, nor expressly *limited* the trial court to a trial on the existence of an aggravating factor." *Id.* at 577 (emphasis in original). In contrast, in *Custer I*, as in *Stratham I*, we expressly held that the evidence should be suppressed.

Finally, the state argues that permitting reconsideration and submission of additional evidence on remand was appropriate here, because the state was essentially "sand-bagged" by our consideration of the "extra-executive authorization" factor in *Custer I*. The state asserts:

> "The strongest factor supporting the trial court's decision is that it was not the state's fault that the state did not put on its proof at the initial hearing. The state acted in good faith in believing that the motion filed, and arguments made, by defendant accurately set out the legal and factual issues to be decided. It is the defendant's obligation to state what the issues are in a motion to suppress[.] This court did not decide the issues that were preserved, raised, and briefed on appeal; instead it held that the state always must prove that impound and inventory policies were validly adopted by a politically accountable extra-executive body— whether or not the defendant even contests that issue. The state could not reasonably have anticipated that this case would be resolved on that issue; consequently, the trial court was only being fair to the state when the court allowed the state to present its proof on that issue."

Whatever the abstract merit of the state's "sand-bagging" argument, it comes much too late—indeed, one

appeal too late. As noted, the state could have petitioned this court for reconsideration in *Custer I* and raised precisely the same arguments that it made on remand and now makes to us. *See* ORAP 6.25(1). In particular, the state could have: (1) sought clarification of any perceived uncertainty or ambiguity as to the scope of remand, *see* ORAP 6.25(1)(ii); and (2) disputed the propriety of our "*sua sponte*" consideration of the adequacy of the state's proof of "extra-executive authorization." *See* ORAP 6.25(1)(v).[8] It did neither. The trial court erred in denying suppression of the methamphetamine and bomb components.

Convictions for possession of a controlled substance and unlawful possession of a destructive device reversed and remanded for new trial; otherwise affirmed.

---

[8] As previously described, the state unilaterally withdrew its petition for review in *Custer I*, and that petition raised a different, although related, issue.