## Roger A. STILES
### and Betty Stiles,
### husband and wife,
*Plaintiffs-Appellants,*

*v.*

## David GODSEY,
as Trustee of the Margaret H. Ponting Trust;
Douglas F. Richardson and Jocelyn H. Richardson;
James A. Stoner;
John Allen Dillingham;
Linden Dale Kincaid;
Marle Kincaid;
Stephen M. Foster;
Charlene L. Walker;
Carl D. Sawyer;
Carol J. Sawyer;
Marjorie T. Condray,
as Trustee of the Marjorie T. Condray Living Trust;
Laverne Methven,
as Trustee of the Laverne Methven Revocable Trust,
*Defendants-Respondents,*

*and*

## Emery L. GAJDAN;
Margit Gajdan;
Barbara Jean Cournoyer;
Jack C. Juell;
Janet Juell;
Carl Dependahl;
Carol J. Dependahl;
William H. Skinner;
Eunice Skinner;
Robert R. Taylor;
Rella D. Taylor,
*Defendants.*

Josephine County Circuit Court
02CV0357; A135021

225 P3d 81

Judith Giers argued the cause for appellants. With her on the briefs was Giers Olsson PC.

Duane Wm. Schultz argued the cause for respondents James A. Stoner, John Allen Dillingham, Linden Dale Kincaid, Marle Kincaid, Stephen M. Foster, Charlene L. Walker, Carl D. Sawyer, Carol J. Sawyer, Marjorie T. Condray, as Trustee for the Marjorie T. Condray Living Trust, and Laverne Methven, as Trustee of the Laverne Methven Revocable Trust.

No appearance for respondents David Godsey, as Trustee of the Margaret H. Ponting Trust, Douglas F. Richardson, and Jocelyn H. Richardson.

Before Armstrong, Presiding Judge, and Rosenblum, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiffs brought an action for common-law adverse possession, statutory adverse possession under ORS 105.620(1), and to obtain a prescriptive easement. The land at issue (the disputed area) is along the westerly border of property owned by defendant Stoner that is located adjacent to and east of plaintiffs' residential lot. Other defendants in the case have rights to an easement over a portion of the land in question. Plaintiffs sought to extinguish all of defendants' interests in the disputed area. The trial court granted plaintiffs a prescriptive easement over the disputed area but denied them adverse possession of the property. Plaintiffs appeal, asserting that the trial court erred in denying them adverse possession of the disputed area. On *de novo* review, ORS 19.415(3) (2007),[1] we reverse as to a part of the disputed area and otherwise affirm the judgment.

In 1987, plaintiff Roger Stiles purchased Josephine County Tax Lot 2300 from his wife's parents, the Ridleys, who had, in turn, acquired the property in 1980.[2] The property is improved with a residence built in 1956. Tax Lot 2400 is adjacent to the east of plaintiffs' lot and was created in 1959 as part of a subdivision known as Mesman Manor. At the time of the sale of the first two lots in the subdivision, a ten-foot wide easement along the westerly border of Tax Lot 2400 was reserved to allow the owners of the remaining 13 subdivision lots to access the Rogue River. Defendant Stoner purchased Tax Lot 2400 in 2002. The Stoner lot has additional property to the north that accreted to the original lot as the course of the river shifted.

Plaintiffs contend that they and their predecessors have occupied the easement strip along the Stoner lot, as well as an area of the Stoner lot on the current banks of the river, in such a way as to give them ownership of the property by

---

[1] ORS 19.415 was recently amended by Senate Bill 262 (2009). Or Laws 2009, ch 231, § 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, § 3. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415.

[2] Plaintiff Betty Stiles acquired her interest in the property from her husband in 2005.

adverse possession. The disputed area has three sections, each distinct in character and use. The first section of the area in question is the original Mesman Manor easement strip, which runs between the residences on the Stiles and Stoner lots, along the westerly border of the Stoner lot. The parties refer to this piece of property as the "deeded easement" because it is referenced and described in the Mesman Manor deeds. The area is fenced by a stake fence that runs along its eastern side, within the Stoner lot, a wire fence placed by plaintiffs against the stake fence to contain their pets, and a board fence across the easement that joins with plaintiffs' driveway gate, effectively blocking the mouth of the easement from a southern entry. Those fences separate the first section of the disputed area from the rest of the Stoner lot and the other subdivision lots. Plaintiffs' patio and driveway encroach into this first section of the disputed area. Plaintiffs have made other improvements to that area.

The second section of the disputed property is a continuation of the original easement to the north on land that accreted to the Stoner lot. The property slopes toward the river and is not fenced. The parties refer to this section as the "accreted easement." Finally, the third section of the disputed property is the "riverfront triangle," a section of land along the Rogue River to the east of the accreted easement. In the 1980s and 1990s, plaintiffs made some improvements to the second and third sections of the disputed area, including a stairway, lighting, and landscaping. The properties are configured as follows:

The legal description of plaintiffs' property on their deeds does not include any part of the disputed area or any frontage on the Rogue River. Plaintiff Roger Stiles did not look at the deed when he purchased the property in 1987, nor did he attempt to locate boundary markers prior to 2002. However, plaintiff Roger Stiles testified that his predecessor in interest, Jack Ridley, informed him at the time of the purchase that Tax Lot 2300 ran from "fence line to fence line" and that the property boundary followed the edge of the landscaping down to the river. Plaintiff Roger Stiles also testified that the visual cues on the property, including the fences and landscaping, led him to believe that his property included the easement area and the riverfront triangle.

Plaintiffs brought several claims for adverse possession and a prescriptive easement against two distinct groups of defendants. First, plaintiffs sought to acquire title to the disputed area from defendant Stoner by adverse possession. Second, plaintiffs claimed to adversely possess the ten-foot access easement held by the remaining defendants. Alternatively, plaintiffs sought prescriptive easements over the disputed land in order to continue their use and activities on the property.

The trial court found in favor of defendants on the adverse possession claims, but granted a prescriptive easement over the disputed area to plaintiffs, allowing them to maintain their encroachments, carry out landscaping, and use the riverfront portion of the disputed area for recreational purposes. On appeal, plaintiffs assign error to the denial of their claims for common law and statutory adverse possession.

■ At common law, to establish ownership by adverse possession, claimants had to prove by clear and convincing evidence that they, or they and their predecessors in interest, maintained actual, open, notorious, exclusive, hostile, and continuous possession of the property for a ten-year period. *Lieberfreund v. Gregory*, 206 Or App 484, 490, 136 P3d 1207 (2006). In 1989, the legislature enacted ORS 105.620, codifying the common law and adding a requirement that the party claiming adverse possession over a piece of property must have had an "honest belief of actual ownership" when he or

she entered into possession of the property. *Id*. ORS 105.620 provides:

"(1)   A person may acquire fee simple title to real property by adverse possession only if:

"(a)   The person and the predecessors in interest of the person have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years;

"(b)   At the time the person claiming by adverse possession or the person's predecessors in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:

"(A)   By the person and the person's predecessor in interest, continued throughout the vesting period;

"(B)   Had an objective basis; and

"(C)   Was reasonable under the particular circumstances; and

"(c)   The person proves each of the elements set out in this section by clear and convincing evidence.

"(2)(a)   A person maintains 'hostile possession' of property if the possession is under claim of right or with color of title. 'Color of title' means the adverse possessor claims under a written conveyance of the property or by operation of law from one claiming under a written conveyance.

"(b)   Absent additional supporting facts, the grazing of livestock is insufficient to satisfy the requirements of subsection (1)(a) of this section.

"(3)   As used in this section and ORS 105.005 and 105.615, 'person' includes, but is not limited to, the state and its political subdivisions as created by statute."

The statutory requirements apply to claims that are filed and interests that vest after January 1, 1990. Or Laws 1991, ch 109, § 3. Plaintiffs brought both common law and statutory claims for adverse possession. We conclude that the significant events that are relevant to plaintiffs' adverse possession claims occurred only after plaintiff Roger Stiles acquired Tax Lot 2300 in 1987. Because there was no clear

and convincing evidence of adverse possession prior to that time, we address only plaintiffs' statutory adverse possession claims.

■ Under ORS 105.620(1), then, plaintiffs must show by "clear and convincing evidence" that they have "maintained actual, open, notorious, exclusive, hostile and continuous possession" of the disputed area for a period of 10 years. "Clear and convincing evidence" means evidence that makes a fact at issue "highly probable." *McIntyre v. Photinos*, 175 Or App 478, 485 n 3, 28 P3d 1259 (2001).

■ The element of actual use is satisfied if a claimant establishes a "use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited." *Allison v. Shepherd*, 285 Or 447, 452, 591 P2d 735 (1979). To establish a use that is "open and notorious," plaintiffs must prove that their possession is " 'of such a character as to afford the [owner] the means of knowing it, and of the claim.' " *Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 560, 994 P2d 106 (1999) (quoting *Hicklin v. McClear*, 18 Or 126, 138, 22 P 1057 (1889)). The exclusivity of the use also depends on how a reasonable owner would or would not share the property with others in like circumstances. *See Russell v. Gullett*, 285 Or 63, 67, 589 P2d 729 (1979). A use is "continuous" if it is "constant and not intermittent." *Hoffman*, 329 Or at 560. The required constancy of use, again, is determined by the "kind of use that would be expected of such land." *Allison*, 285 Or at 452.

ORS 105.620(2)(a) defines "hostility" as follows:

"A person maintains 'hostile possession' of property if the possession is under claim of right or with color of title. 'Color of title' means the adverse possessor claims under a written conveyance of the property or by operation of law from one claiming under a written conveyance."

In enacting ORS 105.620(2)(a), "the legislature intended the element of hostility to retain its common-law meaning." *Clark v. Ranchero Acres Water Co.*, 198 Or App 73, 80, 108 P3d 31 (2005). As we noted in *Clark*,

"[t]he statute thus tracks precisely the common-law treatment of the same element. *Hoffman v. Freeman Land and*

*Timber, LLC.*, 329 Or 554, 560 n 3, 994 P2d 106 (1999), for example, plainly describes the concepts of 'claim of right' and 'color of title' as 'alternative way[s] in which the element of hostility may be established' in a common-law adverse possession claim. * * * Ordinarily, a 'claim of right' is established by evidence of a claimant's 'intent to appropriate land to him or herself, to the exclusion of all others, regardless of whether that claimant has actual title to that land[.]' *Hoffman*, 329 Or at 561."

198 Or App at 79-80 (second and third brackets in original; internal citation omitted).

██  Alternatively, a "claim of right" can be established by proof of "an honest but mistaken belief of ownership, resulting, for example, from a mistake as to the correct location of a boundary." *Hoffman*, 329 Or at 561 n 4. "[P]ossession under a mistaken belief of ownership satisfies the element of hostility or adverseness in the application of the doctrine of adverse possession." *Norgard et al v. Busher et ux*, 220 Or 297, 303, 349 P2d 490 (1960). In *Norgard*, the Supreme Court explained that the doctrine of pure mistake applies when a deed correctly identifies the boundaries of the land, but the person taking property under that deed actually occupies different property that he or she mistakenly believes is included in the deeded boundaries. The court stated that " '[t]he intent derived directly from the physical senses, i.e., the intent to claim the land actually occupied, should be regarded as overriding the less immediately effective intent to hold in conformity with the deed.' " *Id.* at 302 (quoting Lon L. Fuller, *Adverse Possession—Occupancy of Another's Land Under Mistake as to Location of a Boundary*, 7 Or L Rev 329, 336 (1928)). The mistaken belief, however, must be a pure mistake, not a mistake based upon conscious doubt. *Faulconer v. Williams*, 327 Or 381, 390-91, 964 P2d 246 (1998).

ORS 105.620(1)(b) requires proof of such an "honest mistake" to establish an adverse possession claim. The statute requires a claimant to prove by clear and convincing evidence that (1) the claimant had an "honest belief that the [claimant] was the actual owner of the property" at the time that the claimant "first entered into possession of the property"; (2) the honest belief "continued throughout the vesting period"; (3) the belief "[h]ad an objective basis"; and (4) the

belief was "reasonable under the particular circumstances." In *Clark*, relying on *Manderscheid v. Dutton*, 193 Or App 9, 16, 88 P3d 281, *rev den*, 337 Or 247 (2004), we noted that whether an honest belief is reasonable "will depend on the circumstances of each case," and that "the size of the property in relation to the discrepancy, the nature of the land, the experience of the parties, and what they had been told all bear on the reasonableness of the belief." *Clark*, 198 Or App at 83.

■       Applying the statutory criteria to the disputed area, we conclude that plaintiffs presented clear and convincing evidence of adverse possession of the first section—the deeded easement portion—of the disputed area against all defendants, but that such proof was lacking as to the accreted easement and riverfront triangle portions of that area. With respect to the deeded easement portion, the record shows that the covered patio to plaintiffs' house encroaches into the easement area. It is not clear if the patio was originally constructed as part of the house in 1956, but the record shows that the patio was covered and improved sometime after the easement was created in 1966.

As noted above, a wooden stake fence exists on the eastern border of the deeded easement and 10 feet into the Stoner lot. It is not clear when that fence was built. The description of the Mesman Manor subdivision in the 1959 plat refers to a fence along the border of the subdivision in this area. The fence was obscured by a blackberry thicket that existed in the southern part of the deeded easement area until that area was cleared by plaintiff Roger Stiles sometime in 1988 or 1989. Defendant Stoner's predecessor in interest was aware of plaintiffs' activities in the deeded easement area and, at times, requested plaintiffs to make repairs to the wooden stake fence.

Plaintiffs' driveway cuts across the deeded easement at the southern end of the easement. The driveway has been in place since plaintiffs' house was constructed. The driveway is gated. A 1979 Josephine County Tax Assessor's diagram of the property includes both the patio and driveway, and there is no evidence in the record that plaintiffs' possession of either patio or driveway has been interrupted since then. A

cross fence connects the driveway gate with the wooden stake fence and blocks access to the deeded easement area. The driveway gate displays a sign that reads, "POSTED, KEEP OUT, NO TRESPASSING." The cross fence has been in place since at least 1979. It is unclear when the sign was placed on the gate. In 1988 and 1989, after his purchase of Tax Lot 2300, plaintiff Roger Stiles removed the blackberries from the deeded easement area, reinforced the fence with hog wire to contain the family pets, constructed and placed planter boxes in the easement area, planted the area with additional bushes, and installed a sprinkler system. The patio was enclosed in 1990.

The maintenance and improvement to the wooden stake fence on the Stoner property is significant evidence that plaintiff Roger Stiles was asserting a claim to the fenced property and providing open and visible notice of that claim to the owners of the Stoner parcel. The fence also operates to describe and delineate the claimed area. *See Norgard*, 220 Or at 306 (describing the legal effect of fencing for an adverse possession claim). The long-term physical encroachment of the patio onto the disputed area is significant. *Green v. Ayres*, 272 Or 117, 121, 535 P2d 762 (1975) (long, continuous, and open possession by building encroachment "makes out a *prima facie* case of adverse possession").

All of the physical improvements to the deeded easement area are obvious, observable, and permanent. They are of the type that an owner would make and were sufficient to put the true owner of the property on notice of a claim of right to the property. Plaintiffs' uses of the deeded easement area since 1989 and their restrictions of access to that area were sufficient to prove an "actual, open, notorious, exclusive, * * * and continuous possession" of the deeded easement area under ORS 105.620(1)(a).

Defendants argue that plaintiffs' use of the deeded easement area was not hostile. Defendants assert that, because plaintiffs produced no written conveyance to support their claim to the deeded easement area or evidence that their predecessors in interest intended to convey that property to plaintiff Roger Stiles, they have failed to prove that their possession was hostile. Defendants also argue that

plaintiffs did not establish hostility by "pure mistake" because their belief of ownership of the disputed area was not reasonable. We disagree.

■ Plaintiffs proved a claim of right to the deeded easement area by proof of an honest belief by plaintiff Roger Stiles that he owned the land. That honest belief was inspired by an oral representation by Jack Ridley at the time of sale, a representation that the property area ran from "fence to fence." Possession under a mistaken belief of ownership satisfies the requirement of hostile use to establish adverse possession. *Norgard*, 220 Or at 303. Plaintiff Roger Stiles testified that this belief continued after 1987 until the time the dispute arose between the parties in 2002, a period of approximately 15 years. That belief had an objective basis under ORS 105.620(1)(b)(B) because it was consistent with the fencing of the easement and the encroachments of the patio and driveway.

Plaintiffs' honest belief regarding their ownership of the deeded easement area was also "reasonable under the particular circumstances" as required pursuant to ORS 105.620(1)(b)(C). Under the factors of reasonableness articulated in *Manderscheid* and *Clark*, the size of the property boundary discrepancy, 10 feet, was small in relation to the size of Tax Lot 2300. Plaintiff Roger Stiles had no reason to question the accuracy of the property description given to him by Jack Ridley. The area was exclusively occupied and used for residential purposes by plaintiffs and their predecessors. Plaintiffs' occupation of the deeded easement area was inconsistent with its use by defendant and his predecessors as well as by the defendant easement holders and their predecessors. No objections were made by defendant or his predecessors to those residential uses or to the improvements made by plaintiffs. We conclude that plaintiff Roger Stiles's honest belief of ownership of the deeded easement area was reasonable under the circumstances, and that plaintiffs established adverse possession of the deeded easement area that extinguished the interests of defendants to that area.

■ In contrast, no clear and convincing evidence was presented to support plaintiffs' claims for adverse possession of the accreted easement and the riverfront triangle areas. As

noted earlier, those areas slope toward the river and are not part of the flat area around the Stiles's house. In 1988 or 1989, plaintiffs installed stairs from the accreted easement area into the riverfront triangle land. Sometime later, plaintiffs added a bench to that part of the accreted easement area. In addition, plaintiffs also put up two lights near the accreted easement. The two lights are respectively located near the top of the stairs and at the edge of the lawn near the accreted easement. Between 1992 and 1994, plaintiffs installed motion detectors and alarms in the area of the accreted easement and the riverfront triangle. The record is not clear as to the location of those improvements. The improvements, nonetheless, are the type of use a true owner would make of the property and were observable by anyone entering the property. Plaintiffs also maintained the grass lawn in this area. Plaintiffs proved actual, exclusive, and continuous use of the accreted easement and riverfront triangle areas for the requisite period of time by showing that the quality and extent of their use was consistent with the use that a reasonable owner would make in like circumstances. *See Allison*, 285 Or at 452.

Plaintiffs did not, however, establish by clear and convincing evidence that their use of the accreted easement and riverfront triangle was open, notorious, and hostile for the vesting period. First, plaintiffs' lawn extended into only a part of the accreted easement and riverfront triangle. Plaintiffs made no actual use of the southern part of the accreted easement and the southeasterly part of the riverfront triangle. Second, some uses made of the area (yard maintenance, construction of bench and stairs) worked to facilitate access to the river, and were not inconsistent with use by the non-Stoner defendants of the accreted easement and riverfront triangle for river access. The duration and location of some of the more notorious uses (motion detectors, alarms) were not clearly shown in the record. Neither of the lights appear to be within the accreted easement or riverfront triangle; rather, they appear to be merely near that area.

Third, any honest belief by plaintiff Roger Stiles that he owned the accreted easement and riverfront triangle was not reasonable under the circumstances. Plaintiff was told by Jack Ridley that the property ownership was "fence to fence"

and that the property boundary followed the lawn down to the river. But there were no fence lines to mark the boundaries of the accreted easement or the riverfront triangle area. The riverfront triangle area lies outside of any northern projection of a line from the wooden stake fence. The yard boundary down to the river was quite irregular and inconsistent with any regular property line. Both areas are lower in elevation than the yard around plaintiffs' house. Portions of the accreted easement and the riverfront triangle were not part of the maintained lawn. There is simply no objective basis in the record to establish the boundaries of the accreted easement or the riverfront triangle. Moreover, the riverfront triangle was a different quality of property—what the trial court deemed to be "coveted river frontage"—than the easement area along the property boundary, suggesting that the delineation of its boundary would not be done in a haphazard manner. Given those circumstances, any belief by plaintiff Roger Stiles that the property boundaries were straight courses, outside of the established yard, was unreasonable. Accordingly, plaintiffs failed to meet their burden of proof to establish adverse possession of the accreted easement and riverfront triangle areas under ORS 105.620.

Reversed and remanded for entry of judgment quieting title to "deeded easement" and confirming prescriptive easement as to "accreted easement" and "riverfront triangle" as described in this opinion; otherwise affirmed.